UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | No.4:07CR048 CAS |
| JESSE AKINS, | ) |  |
| Defendants. | ) |  |

**MEMORANDUM AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b). The Defendant filed a motion to suppress evidence and statements, and the evidentiary hearing was held on February 23, 2007.

**#18 Defendant Jesse Akins' Motion to Suppress Evidence and Statements**

Based upon the evidence adduced at the hearing on the motion to suppress, the undersigned makes the following findings of fact and conclusions of law:

**Findings of Fact**

Frederick Lathan is a police officer with the St. Louis Metropolitan Police Department, currently assigned to investigate narcotics violations. In March, 2006, he was involved in an investigation of narcotics activity at 4119 Pennsylvania, 1st Floor.

Pursuant to that investigation, on March 22, 2006, Det. Lathan applied to Circuit Judge Edward Sweeney of the Twenty-Second Judicial Circuit for a warrant to search 4119 Pennsylvania Avenue, 1st Floor, and to seize narcotics, narcotics paraphernalia, firearms, and cash. The affidavit filed in support of the warrant states in pertinent part as follows:

A reliable confidential informant told Det. Lathan that the Defendant Jesse Akins was storing and selling heroin at 4119 Pennsylvania, 1st Floor. The confidential informant has been used by Lathan on numerous occasions and has provided him with reliable information which has led to three arrests for narcotics trafficking. The confidential informant specifically told Lathan that a person named Tyjuan Brown supplied heroin to the Defendant Jesse Akins at the residence at 4119 Pennsylvania, and the Defendant would then sell and store the heroin at that address on the first floor. The confidential informant said that he had personally observed Brown deliver heroin to Akins at the house within the previous twenty-four hours of the issuance of the warrant. The confidential informant described both the Defendant Jesse Akins and Tyjuan Brown as to their respective ages. Lathan checked the criminal records of both Defendant and Brown, and determined that both individuals fit the description given by the confidential informant. In addition, he obtained photographs of both Brown and Akins which he showed to the informant, and the informant positively identified the photographs of Akins as being the person residing at 4119 Pennsylvania, 1st Floor, and Brown as the person who delivered heroin to him. In addition, a check of the criminal records of both Brown and Akins showed that Akins had prior arrests for unlawful use of a weapon and for violations of the narcotics laws, and that Brown had prior arrests for violations of the narcotics laws. Lathan also conducted surveillances of 4119 Pennsylvania, 1st Floor, on March 20 and 21, 2006. On March 20, 2006, within a one-hour period of time, Lathan observed two separate people go into the house, stay approximately five minutes, and leave. Further, on March 21, 2006, during a one-hour period, he observed three different individuals go into the house on different occasions, stay approximately two minutes, and then leave the house. In addition, the confidential

informant again contacted the agents later on March 21, 2006, and said that he observed the Defendant Akins in possession of a large amount of drugs in the house on that date.

Based on the above affidavit, Judge Sweeney issued a warrant to search 4119 Pennsylvania, 1st Floor, and to seize narcotics, narcotics paraphernalia, guns, and money.

After the warrant was signed, Lathan and other detectives set up a surveillance of 4119 Pennsylvania. After a short time, they observed the Defendant come out of the first floor of 4119 Pennsylvania with a female who was carrying a child. The Defendant and the female got into a Chevrolet Suburban automobile and drove away from the house. Lathan followed the Defendant for about six blocks, and then pulled the car to the curb by activating the emergency lights and siren on the police vehicle. Lathan approached the driver's side of the vehicle, and another detective, Det. Wolf, approached the passenger side. As Lathan got to the driver's side of the vehicle, he informed the Defendant that he was a police officer, and that he possessed a warrant to search the Defendant's house at 4119 Pennsylvania. The Defendant was directed to get out of the car, and was detained pending the execution of the search warrant. He was handcuffed by Lathan and asked if he had anything on him, and the Defendant said that the only thing he had was a marijuana blunt. Lathan then patted down the Defendant retrieving the blunt from the Defendant's pocket. Lathan fully advised the Defendant of his rights at this time by reading his full rights to him from a Miranda card. He then asked the Defendant if he understood his rights, and the Defendant stated he understood them.

At this same time, Det. Wolf went to the passenger side of the vehicle and asked the female passenger to step out of the car. The female identified her self as Michelle Lawson, the girlfriend of the Defendant. The detective asked her if she had anything on her person, and she said she had

ecstacy pills that the Defendant had handed her when the police turned on their red lights and siren. The detective then retrieved the pills from Lawson.

After this, the Defendant and Lawson returned to 4119 Pennsylvania in order to execute the search warrant. The officers retrieved the key to the house from the Defendant, and asked him if anyone was inside the house. The Defendant said no one was in the house, and Lathan knocked on the door announcing that he was a police officer and no one answered the door. Lathan used the key to enter the house, and in the second room in which he entered, he observed Michael Lawson, an older person who was the father of Michelle Lawson, lying on a couch in this room.[1] The agents then proceeded to execute the warrant first by going into the bedroom of the house. In the bedroom, they first observed a brown paper bag with several different colored pills in different shapes in the bag. Also in this room, they observed a zip lock bag with various colors and sizes of pills. They also found in close proximity to the pills a loaded assault rifle and a plastic bag containing marijuana. In the kitchen of the house, the officers observed and seized a plate with a razor blade on top of it, and an off-white substance on the plate. They also found digital scales in the kitchen. While this was occurring, Det. Wolf was searching the living room of the house and found behind the television in that room a bag containing many different colored pills which he believed to be ecstasy. After completing the search, the detectives told the Defendant what they had found during the search. He

---

[1] Michael Lawson testified at the hearing. The only manner in which his testimony differed from Lathan's was that Lathan said he knocked twice before entering the house and found Michael Lawson lying on the couch. Lawson testified that Lathan knocked only once and identified himself as a police officer before entering and that he was not lying on the couch. Although the undersigned does not believe that this testimony has any legal significance, the undersigned nevertheless credits the testimony of Lathan and rejects the testimony of Lawson. Lawson is the father of Michelle Lawson, the Defendant's girlfriend, and the grandfather of Michelle Lawson's child. In addition, the undersigned observed Lawson to be a very excitable and defensive witness when cross-examined by the Assistant U.S. Attorney.

told them that his girlfriend had nothing to do with the drugs, and said he bought the drugs at a club on the east side for five thousand dollars. He said he had to sell the pills in order to make money because he had just recently had a baby.

**Conclusions of Law**

A. The Detention and Arrest of the Defendant

Based on the above findings, the undersigned concludes that the detention of the Defendant pursuant to the search warrant and his arrest were based on probable cause and were lawful. First, the undersigned concludes that the fact that Det. Lathan may have believed that he was only detaining the Defendant prior to conducting the search of his house is not controlling on the issue of probable cause or the legality or illegality of the arrest. As to this exact issue, the court stated as follows in United States v. Abadia, 949 F.2d 956 (8th Cir. 1991):

> Because probable cause for arrest is determined by objective facts, it is immaterial that the arresting officer did not think he had enough facts upon which to make an arrest.

United States v. Abadia, 949 F.2d 956-59 n. 14.

The undersigned concludes that based on the totality of the circumstances, there were enough "objective facts" to justify probable cause for the detention and arrest of the Defendant, and his arrest prior to the execution of the search warrant. "Police officers may arrest persons without a warrant if they have probable cause to believe that the person arrested has committed a crime." Gerstein v. Pugh, 420 U.S. 103 (1975); Beck v. Ohio, 379 U.S. 89 (1964). Probable cause is a "fluid concept turning on the assessment of probabilities in a particular factual context–not readily or even usefully reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983). In the context of a warrantless arrest, all that need be shown is a "fair probability" that a crime has been

5

committed and the defendant committed the crime. See Illinois v. Gates, supra. Further, the uncorroborated word of a reliable informant without more is sufficient to provide probable cause for the issuance of a search warrant. As the court stated in United States v. Pressley, 978 F.2d 1026 (8th Cir. 1992): "It is well settled that the statements of a reliable informant can provide by themselves a sufficient basis for the issuance of a warrant." 978 F.2d 1026, 1027. See also Draper v. United States, 358 U.S. 307 (1958).

In United States v. Sherrill, 27 F.3d 344 (8th Cir. 1994) (a case very similar to the case now at bar), the court held that an affidavit for a warrant to search the defendant's home could provide probable cause to arrest the defendant even prior to the search. In Sherrill, supra, Officers applied for and obtained a warrant to search the defendant's house. The facts relied on by the officers to support the warrant include a reliable informant personally observing the defendant selling cocaine in his house shortly before the warrant was issued, and observations of the police officers showing pedestrian traffic consistent with drug sales. Before executing the warrant, the police "detained" and arrested the defendant at a location away from the search, and took the defendant to the house while the search was conducted. In holding this arrest to be lawful even before the house was searched and drugs were recovered, the court stated as follows:

> Sherrill argues that because the police had not yet conducted the search, the police had no probable cause to arrest him. Thus, Sherrill contends that he was illegally arrested in violation of the Fourth Amendment and the evidence later found when he was searched incident to the arrest should have been suppressed. We disagree. . .
>
> Although the police officers may not have believed that they had probable cause to arrest Sherrill, and indeed, did not apply for an arrest warrant when they applied for the search warrant, we believe the objective facts of the case reveal that probable cause existed. . .

6

> In this case, when the officers stopped Sherrill, the police knew from a confidential informant that Sherrill had been dealing crack from his home and had sold crack within the past twelve hours. The informant was a reliable source having earlier provided accurate information that resulted in several other arrests and convictions. . .The police also substantially corroborated the informant's tip by independent investigation. . .The police observed unusual pedestrian traffic consistent with drug sales both at Sherrill's residence and a dwelling that Sherrill often visited. Based on the totality of the circumstances, we conclude that probable cause existed to arrest Sherrill at the time the officers stopped him in his car.

27 F.3d 344, 346, 347.

Essentially the same situation exists in the case now at bar that was present in Sherrill, supra. In the present case, the officers possessed detailed information from a reliable informant that the Defendant was selling quantities of heroin at the premises of 4119 Pennsylvania, 1st Floor. The informant had personally observed the Defendant at that location just twenty-four hours prior to the Defendant's arrest and the search warrant being issued in possession of a large amount of heroin and selling it to individuals who would come to the door. In addition, the informant provided reliable information on numerous occasions, and this information led to the arrests of three individuals for narcotics charges. Further, the information was corroborated by the arrest record of both the Defendant and Tyjuan Brown, the identification of the pictures of Brown and the Defendant by the informant, and the informant's accurate description of both of them as to age. In addition, the agents had observed multiple short transactions at the residence during a two-hour period of surveillance.[2]

---

[2] The Defendant alleges that the affidavit is insufficient because it states that Lathan used the confidential informant on numerous occasions which led only to three arrests. He says that this shows that the confidential informant was not always reliable. He also states that Lathan did not conclude that the numerous short term visits were consistent with drug sales and, thus, this was insufficient for the issuing judge to consider these short-term visits in issuing the warrant. As the court stated in United States v. Ventresca, 380 U.S. 102, 108:

Thus, the undesigned concludes in the case now at bar, as did the court in <u>Sherrill</u>, <u>supra</u>, that there was probable cause to arrest the Defendant.[3]

B.  The Search of 4119 Pennsylvania, lst Floor

Based on the above findings, the undersigned concludes that the search of 4119 Pennsylvania, 1st Floor, was lawful and therefore the items seized pursuant to the search warrant should not be suppressed.  For a search warrant to be valid, it must be based upon a finding by a neutral judicial officer that there is probable cause to believe that evidence, instrumentalities, or fruits of a crime or contraband may be found in the place to be searched. <u>Johnson v. United States</u>, 333 U.S. 10 (1948);

> The court should not invalidate a warrant by interpreting the affidavit in a hypertechnical rather than a common sense manner.  Although on a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.

<u>Ventresca</u>, <u>supra</u>, at 108, 109.

Based on the above, the undersigned concludes that a common sense reading of the affidavit shows that Lathan twice stated that the informant was a reliable confidential informant, and further stated that he had used the informant on numerous occasions that led to at least three arrests for narcotics violations.  The affidavit does not state nor should it be read to mean that on occasions when arrests did not occur that the informant's information was not reliable.

In addition, the undersigned concludes that the factual statements by Lathan that he observed five individuals over a two-hour period of time on two different days visit the Defendant's residence, stay approximately two or three minutes, and then leave, is information from which a judge might reasonably conclude that the activity is consistent with the drug activity described by the confidential informant.  Therefore, the undersigned concludes that the issuing judge properly considered both the informant to be reliable and the corroboration based on the surveillance.

[3]  Because the Defendant was legally arrested, any items seized pursuant to a search incident to the arrest should not be suppressed. <u>New York v. Belton</u>, 453 U.S. 454 (1981).

Warden v. Hayden, 387 U.S. 294 (1967). The quantum of evidence needed to meet this probable cause standard has been addressed by the Supreme Court on numerous occasions:

> In dealing with probable cause, as the very name implies, we deal with probabilities. These are not technical, they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

Brinegar v. United States, 338 UJ.S. 160, 176 (1949).

Probable cause is a "fluid concept, turning on the assessment of probabilities in a particular factual context–not readily or even usefully reduced to a neat set of legal rules." Illinois v. Gates, supra. at 232. All that must be shown is a "fair probability" that contraband or evidence will be found at the premises to be searched. Illinois v. Gates, supra.

It is also clear, as previously stated, that information from a reliable informant without more will provide probable cause for a search warrant. See United States v. Pressley, supra. In addition, even an anonymous tip from a crime stopper's hotline or an informant whose reliability has not been tested is sufficient upon which to create probable cause as long as there is adequate corroboration of even innocent detials. See United States v. Briley, 726 F.2d 1301 (8th Cir. 1984). Further, affidavits that are almost identical to the one in this case have been held sufficient to establish probable cause to search. See United States v. Sherrill, supra.

Based on the above, the undersigned concludes that the warrant is valid and should be upheld. The warrant specifically describes the premises to be searched and the items to be seized. The affidavit also contains firsthand information from a reliable informant that the informant has personally observed heroin on the premises within twenty-four hours of the search warrant being issued. The affidavit also shows corroboration of the informant through the arrest record of the Defendant, the identification of the Defendant and Tyjuan Brown, and the observations of the police officers. The

undersigned therefore concludes that his information provides substantial probable cause for the warrant to search the premises for heroin and the other items. There was at least a "fair probability" that drugs and other items would be found on the premises.[4]

Further, the undersigned concludes that all of the items seized during the execution of the warrant were lawfully obtained. The drugs are detailed in the warrant, and the other items were found during the course of lawfully executing the search warrant, and these other items are all clearly possible evidence of drug trafficking crimes. See Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971).

C. Statements Made by the Defendant After his Detention and Arrest

The undesigned concludes that the custodial statements made by the Defendant were legally obtained, except for the statement made by the Defendant as he was being handcuffed in response to a question as to whether or not he had anything on him. He replied that he had marijuana, and the undersigned concludes that the Defendant was, at that point, in custody having been handcuffed without being advised of his rights. However, immediately after handcuffing the Defendant, the police officer patted down the Defendant and seized the Phillies Blunt cigar packed with marijuana. Further, immediately after the Defendant was placed in handcuffs, he, at that time, was fully advised

---

[4] The Defendant also alleges that the judge was not neutral and detached in this matter, and did not properly consider the affidavit. He states this because Det. Lathan testified that he believed that the judge reviewed the affidavit for only one to two minutes. In this regard, the affidavit is one and a half pages long, and Lathan was obviously estimating the length of time in which the judge reviewed the affidavit. There is nothing to indicate that the judge did not fully consider the affidavit and the warrant, and the testimony showed that the warrant was properly sworn to by Lathan and issued by the judge in all respects. In addition, Lathan stated that he had presented other warrants to the judge and the judge has never declined to sign a warrant. Again, without more, this does not show that the judge was not neutral and detached. Therefore, the undersigned concludes that the warrant was properly sworn to and signed, and based on the record before the undersigned, the judge was neutral and detached.

of his Miranda rights, stated he understood those rights, and waived his rights by speaking to the police officers. The evidence, as stated, shows that the Defendant was advised of his Miranda warnings at the scene of his arrest, and there was no evidence presented that the Defendant was threatened or coerced in any way, nor was he promised anything in return for making any admissions.

Given the above facts, the undersigned concludes that the Defendant was fully advised of his rights, stated he understood his rights, and knowingly waived his rights by talking to the detectives. The undersigned further concludes that based on the totality of the circumstances, the Defendant's interrogation, the Defendant's statements made after he was advised of his rights were voluntarily made and his free will was not overborne by anything that took place during the interview. Miranda v. Arizona, 384 U.S. 436, 467, 475 (1966); North Carolina v. Butler, 441 U.S. 369, 374-75 (1979); Colorado v. Connelly, 479 U.S. 157 (1986); United States v. House, 939 F.2d 659 (8th Cir. 1992). Therefore, the Defendant's statements, other than his statement that he had marijuana on his person, should not be suppressed. The statement made in response to what he had on him, however, should be suppressed.

### D. The Search of the Automobile and/or Michelle Lawson

Based on the above, the undersigned concludes, first, that the Defendant had no standing to challenge the seizure of the narcotics from Michelle Lawson that Det. Wolf took from her. The Defendant voluntarily gave Michelle Lawson the narcotics, and she had control of them at the time of the stop. Therefore, she had adequate authority and control to hand over the narcotics to the officers. See Schneckloth v. Bustamonte, 412 U.S. 218 (1973). In addition, her admission that she

possessed narcotics in the car gave the officers probable cause to search the vehicle and to seize any items which they found which had evidentiary value. See Chambers v. Maroney, 399 U.S. 42 (1970)

**Conclusion**

Therefore, the Defendant's motion to suppress evidence and statements should be granted with respect to the Defendant's statement as he was being handcuffed that he had marijuana on him, however, in all other respects it should be denied.

\* \* \*

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that Defendant Jesse Akins' Motion to Suppress Evidence and Statements (Doc. #18) be **granted in part and denied in part** consistent with the Memorandum above.

Further, the parties are advised that they have eleven (11) days or until **March 27, 2007**, in which to file written objections to this recommendation and determination. Failure to timely file objections may result in a waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

          /s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this 16th day of March, 2007.